

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

April 4, 2024

**By CM/ECF**

Catherine O'Hagan Wolfe, Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:   *United States v. Mamdouh Mahmud Salim*
            **Docket Nos. 21-2442(L), 21-3148(CON), 23-6185(CON), 23-7196(CON)**

Dear Ms. Wolfe:

    Mamdouh Mahmud Salim appeals from an order entered on August 14, 2023 in the United States District Court for the Southern District of New York, by the Honorable Lewis A. Kaplan, United States District Judge, denying Salim's second petition for a writ of error *coram nobis*.[1] On March 14, 2024, this Court consolidated that appeal with Salim's previously briefed appeals, and permitted supplemental letter briefs addressing issues unique to that appeal. *United States v. Salim*, No. 23-7196 (2d Cir. March 14, 2024). The Government respectfully submits this supplemental letter brief pursuant to that order and in response to Salim's supplemental letter brief filed March 28, 2024.

---

[1] On September 20, 2023, within the time frame specified in Federal Rule of Appellate Procedure 4(b)(4), Judge Kaplan granted Salim's request to file a notice of appeal from that order. (D.C. Dkt. 2228).

  "D.C. Dkt." refers to an entry on the District Court's docket in 98 Cr. 1023; "Gov't Br." refers to the Government's principal brief in this consolidated appeal; "Initial Salim Br." refers to Salim's principal brief in this consolidated appeal; "A." refers to the appendix filed with that brief; and "Supp. Br." refers to Salim's supplemental letter brief filed in this appeal. Unless otherwise noted, citations omit all case and record citations, internal quotation marks, footnotes, and previous alterations.

**Background**

As is explained in greater detail in the Government's principal brief, following the August 1998 bombings of the U.S. embassies in Kenya and Tanzania, Salim was charged in multiple indictments based on his role in al Qaeda (the "terrorism case"). In a separate indictment, Salim was charged with other crimes related to his November 2000 assault on a corrections officer while awaiting trial in the terrorism case, during which assault Salim stabbed the corrections officer in the eye and brain with a sharpened plastic comb (the "attempted murder case"). In August 2010, Salim was sentenced to life imprisonment in the attempted murder case. On April 30, 2019, the Government submitted to Judge Kaplan a proposed *nolle prosequi* with respect to the indictments in the terrorism case (the "*Nolle*"), and on May 8, 2019, Judge Kaplan approved and filed the *Nolle* (the "May 8 Order"). (Gov't Br. 3-10).

As Judge Kaplan has noted, Salim "persistently has contested the [District] Court's approval of the *nolle prosequi* without any success." (D.C. Dkt. 2226 at 1-2). Those efforts included Salim's first *coram nobis* petition, filed January 31, 2023 and denied on February 21, 2023. (A. 145-67). On August 11, 2023, Salim filed his second *coram nobis* petition, claiming to have obtained new "facts and evidences" since his first *coram nobis* petition. (D.C. Dkt. 2225 at 4). Salim argued that these new facts and evidence showed his counsel was ineffective because his counsel, who he claimed did not understand the nature of a *nolle*, allegedly did not consult with Salim about whether to object to the *Nolle* or appeal from it (*id.* at 7-10), and also showed that the Government "breached" the *Nolle* by asking to be notified if Salim is released from custody, a request Salim argued demonstrates that the Government will immediately reinstate the terrorism case against him if he is released (*id.* at 11-14). As he had in his first *coram nobis* petition (A. 146), Salim sought vacatur of the May 8 Order and assignment of counsel to

challenge the Government's application to dismiss the indictments of Salim in the terrorism case. (D.C. Dkt. 2225 at 15).

In denying Salim's second *coram nobis* petition, Judge Kaplan found that Salim did not meet the standards for *coram nobis* relief, principally because Salim was not suffering any legal consequences that might be remedied by granting the writ:

> He is serving a life sentence for a conviction unrelated to the indictments in this case, has exhausted all appellate and collateral remedies, and is most unlikely ever to be released. His prediction that the government might elect to prosecute him if he ever is released . . . is [entirely] speculative and in any event is not a proper basis at this juncture to assume any continued suffering of legal consequences from the *nolle*. Moreover, there is no reason to suppose that [defendant] would have had any realistic prospect of success had he appealed the order accepting the *nolle*.

(D.C. Dkt. 2226 at 2-3).

**Argument**

Judge Kaplan acted well within his discretion when he denied Salim's second *coram nobis* petition. As the Government has explained, *coram nobis* is an extraordinary remedy, granted rarely and only when a petitioner has demonstrated, *inter alia*, circumstances compelling a grant of relief to achieve justice and that the petitioner continues to suffer non-speculative legal consequences from his conviction that amount to a concrete threat of serious harm and that may be remedied by granting of the writ. (Gov't Br. 49-50). In his first *coram nobis* petition, which sought the same relief as the second, Salim came nowhere near making the required showing. (Gov't Br. 50-55). Salim's claim that he made the required showing in his second *coram nobis* petition is no more persuasive.

Salim argues first that Judge Kaplan erred by denying his second *coram nobis* petition because documents submitted with that petition "plainly establish" that Louis V. Fasulo, Salim's attorney in the District Court, "was unaware that (i) some nolle prosequis enter with prejudice

while others enter without prejudice, and (ii) Salim had the right to oppose the Rule 48(a) motion," and those documents "warrant the requested relief based on the ineffective assistance of [Salim's] counsel." (Supp. Br. 7). This argument fails for multiple reasons.

As an initial matter, Salim has cited no case, and the Government is aware of none, that permits a defendant to demonstrate ineffective assistance based on what he claims his counsel was unaware of, as opposed to what assistance counsel provided or failed to provide. To the contrary, "[t]o prove ineffective assistance, a petitioner must show that defense counsel's *performance* was objectively unreasonable and that the deficient *performance* prejudiced the defense." *Doe v. United States*, 915 F.3d 905, 910 (2d Cir. 2019) (emphasis added); *see Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

Presumably, Salim's argument is that Mr. Fasulo was ineffective because his alleged unawareness led Mr. Fasulo not to oppose entry of the *Nolle* without prejudice. This is little different from the argument Salim has already made to this Court that denial of his first *coram nobis* petition was error because of "his counsel's ineffectiveness . . . in failing to recognize Salim's right to oppose the Rule 48(a) motion" (Initial Salim Br. 33), and fails for reasons the Government has already explained (Gov't Br. 51-53). In short, Salim has not shown, and cannot show, the required prejudice from his counsel's failure to oppose entry of the *Nolle* without prejudice because Judge Kaplan found, correctly, that "there are no grounds for making the dismissal with prejudice" (A. 131),[2] and "a petitioner cannot show prejudice if the claim or

---

[2] Judge Kaplan also correctly rejected Salim's claim that his consent was required before Judge Kaplan approved the *Nolle*. (D.C. Dkt. 2134).

objection that an attorney failed to pursue lacks merit." *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012). Similarly, Salim has failed to show deficient performance by Mr. Fasulo because "failure to make a meritless argument does not amount to ineffective assistance." *United States v. Regalado*, 518 F.3d 143, 150 n.3 (2d Cir. 2008). Furthermore, as a general matter, a defense counsel's decision not to oppose entry without prejudice of a *nolle*, particularly where, as Judge Kaplan noted, "the likelihood that the government ever would seek to revive the now dismissed prosecution, especially in light of the fact that defendant is unlikely ever to be released from prison, is *de minimis*" (A. 131), falls well within "the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *see id.* (counsel must have "wide latitude . . . in making tactical decisions").

The documents on which Salim relies—a May 23, 2019 letter from Mr. Fasulo to Salim and a February 14, 2023 declaration by Mr. Fasulo (D.C. Dkt. 2225 at 16-17)—do not change the prejudice analysis. Regardless of what Mr. Fasulo said in his letter to Salim and in his declaration, there were no grounds for entry of the *Nolle* with prejudice (A. 131), and thus any failure to seek that relief did not prejudice Salim.

Nor do these documents overcome the "strong[] presum[ption]" that Mr. Fasulo "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. These documents do not even establish that Mr. Fasulo was unaware that a *nolle prosequi* may be entered with or without prejudice or that he was unaware of Salim's "right"[3] to oppose the Government's Rule 48(a) motion. In neither of those

---

[3] Salim cites no authority for the proposition that he had a "right" to oppose the Government's Rule 48(a) application while Mr. Fasulo was his counsel, *i.e.*, before the *Nolle* was filed (*see* D.C. Dkt. 2166). To the contrary, multiple cases establish that Salim need not have consented to the filing of the *Nolle* and that an *ex parte* application for leave to file a *nolle* before trial is permitted by Rule 48(a). (*See* Gov't Br. 32-34).

documents, one of which was drafted by Salim's current appellate counsel (*see* Supp. Br. 5 n.4), did Mr. Fasulo say he lacked the awareness Salim now claims Mr. Fasulo lacked. *See Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."). Salim's inferential claim that "his counsel's (i) contention in the May 23 Letter that entry of the May 8 order 'completes the legal battle on the case', and (ii) admission in the Declaration that he never alerted Salim of his right to urge entry of a nolle prosequi with prejudice, place beyond doubt the conclusion that counsel didn't know that some nolle prosequis enter with prejudice while others enter without prejudice, or that Salim had the right to oppose the Rule 48(a) motion," (Supp. Br. 4-5), is unpersuasive. As noted above, Judge Kaplan observed that "the likelihood that the government ever would seek to revive the now dismissed prosecution, especially in light of the fact that defendant is unlikely ever to be released from prison, is *de minimis*," and found that there were "no grounds for making the dismissal with prejudice." (A. 131). In these circumstances, Mr. Fasulo's description of the legal battle involving Salim as "complete[]" after the *Nolle* was filed was an accurate description of the status of the case. Reading into that description a lack of awareness on Mr. Fasulo's part that dismissals of indictments pursuant to Rule 48(a) are sometimes with prejudice is simply speculation. Similarly, Mr. Fasulo's failure to discuss with Salim opposing the Government's request for dismissal is far more readily explained by the absence of any grounds for seeking such relief than any lack of awareness on Mr. Fasulo's part that such relief could be sought. Thus, these documents do not come close to satisfying Salim's burden of "prov[ing]" that Mr. Fasulo "made errors so serious that the representation fell below an objective standard of reasonableness." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990).

Salim argues next, and finally, that another document purportedly shows "that the specter of another prosecution against Salim for the charges contained in the dismissed indictments remains alive and real" (Supp. Br. 2); indeed, he claims that "the sword of Damocles hangs over Salim as he litigates to obtain relief from the life sentence, in that if he's successful, this prosecution is just going to start all over again." (Supp. Br. 9). The document on which Salim relies is an "Individualized Needs Plan – Program Review" prepared by the Federal Bureau of Prisons, which states that "Inmate Salim is subject to deportation if/when released from custody. The Southern District of New York dismissed charges. However, they have requested to be notified if/when released from custody." (D.C. Dkt. 2225 at 18).

As an initial matter, Salim's conclusion, based on the Government's request that it be notified if and when Salim is released, that "this prosecution is just going to start all over again" (Supp. Br. 9), is, as Judge Kaplan correctly held, "speculative," especially in light of the life sentence Salim is serving for an unrelated conviction, with respect to which he has exhausted his appellate and collateral remedies (D.C. Dkt. 2226 at 2-3). Notice to the Government when a prisoner is released permits the Government to take actions other than recommencing prosecution, such as, for example, assisting with the deportation process for a defendant, such as Salim, who is subject to deportation, or notifying those who may have an interest in knowing that Salim has been released.

Furthermore, to meet the requirements for *coram nobis* relief, Salim must show, *inter alia*, that "he continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Doe*, 915 F.3d at 910. As the Government has explained (Gov't Br. 53-54), Salim has not been convicted in the terrorism case, and thus suffers no legal consequences at all "from his conviction" in that case. *Doe*, 915 F.3d at 910. Nor does the possibility that Salim may

be prosecuted again constitute the non-speculative "concrete threat of serious harm" required to warrant *coram nobis* relief. *Porcelli v. United States*, 404 F.3d 157, 158 (2d Cir. 2005). Indeed, Salim "has not been injured" by the termination in his favor of the terrorism case, even though the dismissal was without prejudice. *Parr v. United States*, 351 U.S. 513, 516-17 (1956). And the grant of a *nolle* without prejudice, if it were error (which it was not in this case), is hardly an error "of the most fundamental character" that has "rendered the proceeding itself irregular and invalid," and thus is not the kind of error for which *coram nobis* relief is available. *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018). Indeed, it is the usual rule that indictments dismissed on motion of the Government before trial are dismissed without prejudice, *e.g.*, *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2d Cir. 1974); *United States v. Gogarty*, 533 F.2d 93, 95 (2d Cir. 1976), and for good reason, *see United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 138 (2d Cir. 2017) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, . . . or whether to dismiss a proceeding once brought.").

*Klopfer v. North Carolina*, 386 U.S. 213 (1967), on which Salim relies (Supp. Br. 9), does not suggest that Judge Kaplan erred in denying *coram nobis* relief. *Klopfer* concerned an "extraordinary criminal procedure" which allowed the state to "indefinitely postpone prosecution on an indictment without stated justification over the objection of an accused who has been discharged from custody." *Id.* at 214, 216. This procedure allowed a defendant to be "held subject to trial, over his objection, throughout the unlimited period in which the solicitor may restore the case to the calendar. During that period, there is no means by which he can obtain a dismissal or have the case restored to the calendar for trial." *Id.* at 216. Here, in contrast, the indictments of Salim in the terrorism case have been dismissed; there is no "'pendency of the

indictment'" as there was in *Klopfer*. (Supp. Br. 9 (quoting *Klopfer*, 386 U.S. at 222)). Thus, the denial of the right to a speedy trial on a pending indictment found in *Klopfer*, 386 U.S. at 222, is not a right that was denied Salim. *See United States v. Davis*, 487 F.2d 112, 118 (5th Cir. 1973) ("Appellants raise the specter that failure to hold that the Rule 48(a) dismissal in this case barred subsequent prosecution will create a situation analogous to that which the Supreme Court found offensive in *Klopfer v. North Carolina*, 1967, 386 U.S. 213 . . . The point raised is devoid of substance."); *United States v. Amaya*, 206 F. App'x 757, 761 (10th Cir. 2006) (finding *Klopfer* "completely different" from case in which initial indictment was dismissed pursuant to Rule 48(a)).

In short, Judge Kaplan did not abuse his discretion in denying Salim's second petition for a writ of error *coram nobis*. Salim came nowhere near meeting his burden to obtain *coram nobis* relief in his first petition for that relief (*see* Gov't Br. 49-55), and his second petition did not remedy that failing. With respect to Salim's claim of ineffective assistance, he has failed completely to show the required prejudice from his counsel's alleged error. Nor has he shown that his counsel erred by failing to challenge a dismissal without prejudice of the indictments in the terrorism case when, *inter alia*, there were no grounds on which those indictments could have been dismissed with prejudice. And the possibility that Salim may again be indicted is not the non-speculative concrete threat of serious harm required to meet just one of the requirements for *coram nobis* relief. Salim has also failed completely to show the required "circumstances compelling [*coram nobis* relief] to achieve justice." *Doe*, 915 F.3d at 910. As Judge Kaplan correctly held, "the Government was entirely justified in deciding to *nolle* these indictments" (D.C. Dkt. 2134 at 3), and there was no basis to do so with prejudice, (A. 131). Judge Kaplan's

order denying Salim's second petition for *coram nobis* relief should be affirmed.

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

                   by: /s/ Stephen J. Ritchin
                              Stephen J. Ritchin
                              Olga I. Zverovich
                              Assistant United States Attorneys
                              (212) 637-2503/2514